SUMMERS, Justice.
The eight defendants in these four consolidated cases are employees of Farmers Seafood Company, Inc., of Shreveport, Lou *470 isiana. It is charged in a bill of information that they “did purchase, sell, exchange, expose or offer for sale or exchange, or possess with intent to sell or exchange, any freshwater game fish,” a violation of Section 327 of Title 56 of the Revised Statutes. Defendants filed motions to quash and motions to suppress, which were denied by the trial judge. Their application to this Court for certiorari, or review, was granted on April 28, 1978.
Farmers Seafood Company, Inc., has been in the business of selling fresh and frozen seafood, and other game animals and birds, for approximately sixty years. It maintains four outlets in Shreveport. In keeping with its business of furnishing food specialty items, it has imported game fish from other states for many years under regulations which require that the imported fish bear tags indicating that the authorities in the states of origin have approved the exportation and sale. Under these regulations, for example, rainbow trout are received from California and domesticated quail are received from other states and sold by Farmers Seafood Company. In like manner catfish produced in Louisiana are also tagged by Louisiana authorities before they may properly be sold outside the state.
In June of 1975 several sources offered to sell white perch taken in the waters of Mexico to Farmers Seafood Company. The fish were imported from Mexico and subjected to inspection and approval at the border by agencies of the United States government. Proper documentation attested to these facts. When this opportunity was presented, the president of Farmers Seafood Company contacted one of the Commissioners of the Louisiana Wildlife and Fisheries Commission with a view to ascertaining whether the purchase and sale of these fish could be undertaken under the law and regulations pertaining to such matters.
A sample of the fish was obtained and inspected by a state biologist and the Chief of the Commission’s fish division. The President of Farmers Seafood Company was then advised that the white perch from Mexico could be sold legally. Acting on this advice Farmers Seafood Company began the importation and sale of Mexican white perch and black bass in 1975. Its operation was open and public. Notices appeared in newspapers and on the radio advertising the availability of these fish. At no time was the approval for the sale of these white perch revoked.
After beginning the sale of Mexican white perch and black bass, and prior to the arrests of defendants in January 1978, commercial fishermen in Florida were permitted to catch and sell bream, a fish which was overpopulating the waters in and around Lake Okeechobee. These fish were tagged under regulations of the Florida Game and Fresh Water Fish Commission. Farmers Seafood Company also purchased these fish and openly marketed them in their Shreveport outlets.
On January 26, 1978 search warrants were issued upon the initiative and affidavits of the agents of Louisiana Wildlife and Fisheries Commission. The warrants were simultaneously executed at the four retail outlets of Farmers Seafood Company. Bream, white perch and black bass were seized together with documentary evidence establishing that these fish had been imported and purchased. Citations were then issued to the eight employees who are defendants in these consolidated proceedings.
The motions to quash allege that the bills of information do not charge an offense under a valid statute; that Sections 311(21) and 327(A) of Title 56 of the Revised Statutes are unconstitutionally vague, general and indefinite and, as such, violative of Section 2 of Article I of the Louisiana Constitution and the Fourteenth Amendment to the Constitution of the United States. Further, the motions allege, the statutes are null and void because of overbreadth if interpreted to apply to fish legally acquired in a sister state or foreign country.
Sections 327 and 311(21) in question here are contained in Part VII, “Fish and Other Acquatic Life”, of Chapter I of Title 56 of the Revised Statutes containing “General Provisions for Wild Life and Fisheries”. *471 The sections under consideration are contained in Sub-Part A and pertain to the regulation of sport and commercial fishing.
Section 312 of Sub-Part A contains a general introductory provision applicable to the entire sub-part. It declares that the ownership of all fish “existing in the waters of the state” is in the state in its sovereign capacity. And these fish shall not be taken, soldi or had in possession, except as otherwise permitted, and “title of the state to all such fish . . . shall always remain in the state for the purpose of regulating and controlling the use and disposition thereof.” This is a statement of the basic premise upon which the regulatory provisions of Sub-Part A are founded. Such a premise, Louisiana’s sovereignty, is assuredly no basis for regulating the taking of fish in Mexico and Florida.
The particular regulation in contest in the instant case is contained in Section 327 of the Sub-Part A and declares in pertinent part that “No person shall purchase, sell, exchange, expose or offer for sale or exchange, or possess with intent to sell or exchange, any freshwater game fish.” (emphasis added).
Under Section 311, containing “the definitions and constructions” to be used in construing the meaning and purpose of Sub-Part A,. sub-section (21) provides: “Freshwater game fish: any species of fish found in the freshwaters of the state that are taken for sport or recreational purposes. (See game fish).” (emphasis added) Subsection (23) referred in Sub-section (21) defines game fish as “all species of freshwater and saltwater fish which are taken for recreational purposes, and are taken with the aid of or use of, a line, reel, rod, artificial or natural bait.”
It is undisputed in this record that the bream, white perch and black bass found in Farmers Seafood Company outlets were game fish and that they were not “found in the freshwaters of the state.” The meaning of Sections 311 and 327 construed together, as Section 311 directs, are therefore “clear and free from all ambiguity” and “the letter ... is not to be disregarded, under the pretext of pursuing its spirit. La.Civil Code art. 13.
Furthermore, the entire tenor of the sub-part from which the contested sections are derived indicates that the control and regulation of freshwater game fish contemplates those found in the freshwaters of Louisiana. For example, Section 313 declares: “The exclusive control of the fish having a sport or game value in the state is vested in the commission which shall enforce the provisions of law regulating them.” (emphasis added). Reference to “in this state” signifies, in plain language, game fish found in Louisiana waters, not fish harvested from the waters of Mexico or Florida.
In like manner Section 315 defines the authority of the Commission with respect to sanctuaries and propagating places for game fish, authorizing the Commission to set aside “suitable locations in any of the waters of the state ” (emphasis added) and to operate and maintain hatcheries and sanctuaries there. Section 317 authorizes the director of the Commission to declare a closed season “[u]pon securing evidence that the fish in any waters of the state have been depleted.” (emphasis added). Section 318 pertains to the introduction of live fish “into the state.” Nowhere in the sub-part is there a reference to the introduction for human consumption of fresh fish taken in water outside the State. And the Commission’s contemporary construction of its authority does not indicate that any regulation existed which would indicate that introduction for human consumption of fresh fish taken in waters outside the state was contrary to Louisiana Law.
Section 319 prohibits the possession, sale or transportation “into this state” of certain exotic fish. No mention is made of freshwater game fish. Section 320 prescribes the methods of taking freshwater game fish. Although there is no mention of the location affected, it would be specious to read this section as prescribing the method of taking freshwater game fish elsewhere than in this State.
*472 No part of this law indicates an intent to regulate the possession or sale of freshwater game fish taken outside this state.
By their terms Sections 327 and 311(21) do not, therefore, proscribe as unlawful the introduction into this State for human consumption, or the possession or sale thereof, fresh freshwater game fish taken in a foreign nation or another state of the Union, when the taking and disposition of these fish is approved as legitimate in a foreign nation or sister state of the United States.
For the reasons assigned, the ruling of the trial judge is reversed and set aside, and the motions to quash and the motions to suppress filed on behalf of defendants are sustained.
DIXON, J., concurs with reasons.